1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR KING COUNTY**

|  |  |
|---|---|
| JANE DOE #1, an individual, JANE DOE #2 an individual, | NO. |
| Plaintiffs, | COMPLAINT FOR DAMAGES |
| v. | |
| THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, | |
| Defendants. | |

Plaintiffs Jane Doe #1 and Jane Doe #2 (collectively "Plaintiffs"), by and through their

attorneys Michael T. Pfau, Vincent T. Nappo, and Denise Chen of the law firm Pfau Cochran

Vertetis Amala PLLC, hereby state and allege as follows:

## I.    INTRODUCTION

1.1    This lawsuit arises from sexual abuse Plaintiffs suffered at the hands of

Defendants' high priest, Francis DeFord Cochran ("High Priest Cochran"), whom Defendants

knew or should have known posed a danger to Plaintiffs and other children. Despite

COMPLAINT FOR DAMAGES
1 of 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants' knowledge, the Defendants failed to take reasonable steps to protect Plaintiffs from the danger of being sexually abused by Cochran. As a result, High Priest Cochran was able to use his positions with Defendants to sexually abuse Plaintiffs.

## II.    PARTIES

4.1    Plaintiff Jane Doe #1 is a woman who presently resides in Louisville, Kentucky. At the time of the sexual abuse, Jane Doe #1 resided in King County, Washington.  As a result of the negligent and reckless conduct of the Defendants, Jane Doe #1 was sexually abused by a predatory priest while she was a minor religious member of Defendants at a child daycare program run by Defendants.

4.2    Plaintiff Jane Doe #2 is a woman who presently resides in Pullman, Washington. At the time of the sexual abuse, Jane Doe #2 resided in King County, Washington. As a result of the negligent and reckless conduct of the Defendants Jane Doe #2 was sexually abused by a predatory priest while she was a minor religious member of Defendants.

4.3    At all relevant times, Plaintiffs were minor religious members of Defendants, The Church of Jesus Christ of Latter-day Saints, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, and Corporation of the President of the Church of Jesus Christ of Latter-day Saints (all Defendants are collectively referred to herein as "the Defendants").

4.4    At all relevant times, Plaintiffs attended Defendants' religious services, participated in Defendants' church activities, and/or spent time in the Defendants' daycare.

4.5    At all relevant times, High Priest Cochran was the High Priest at the ward, then known as the 6th Ward at the Seattle Stake. High Priest Cochran used and relied upon his position with Defendants to abuse minor religious members on and off church property.

4.6    At all relevant times, Defendant The Church of Jesus Christ of Latter-day Saints, ("the LDS Church") was a foreign religious corporation sole incorporated in the State of Utah that was registered to conduct business in the State of Washington.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.7     At all relevant times, the LDS Church conducted business as "The Church of Jesus Christ of Latter-day Saints," "LDS Church," and "LDS."

4.8     To the extent that the LDS Church was a different entity, corporation, or organization during the period of time in which High Priest Cochran used his position as the High Priest to sexually abuse Plaintiffs, such entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as The Church of Jesus Christ of Latter-day Saints.

4.9     To the extent that the LDS Church is a successor to a different entity, corporation, or organization which existed during the period of time during which High Priest Cochran used his position to sexually abuse Plaintiffs, including any other entity, corporation, or organization that subsequently or eventually merged into the LDS Church, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as The Church of Jesus Christ of Latter-day Saints.

4.10     All such LDS Church-related entities, corporations, or organizations are collectively identified and referred to herein as "LDS Church."

4.11     At all relevant times, Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints ("the LDS Bishop") was a foreign religious corporation sole incorporated in the State of Utah that was registered to conduct business in the State of Washington.

4.12     At all relevant times, the LDS Bishop conducted business as "Corporation of the Presiding Bishop of the Church of Jesus Christ Latter-day Saints," "LDS Bishop," and "LDS."

4.13     At all relevant times, Cochran was a high priest for the LDS Bishop that the LDS Bishop used and relied upon as High Priest to serve Plaintiffs and minor religious members.

4.14     To the extent that the LDS Bishop was a different entity, corporation, or organization, during the period in which High Priest Cochran used his position as High Priest



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

to sexually abuse Plaintiffs, such entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints.

4.15    To the extent that the LDS Bishop is a successor to a different entity, corporation, or organization which existed during the period of time during which High Priest Cochran used his position to sexually abuse Plaintiffs, including any other entity, corporation, or organization that subsequently or eventually merged into the LDS Bishop, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints.

4.16    All such LDS Bishop-related entities, corporations, or organizations are collectively identified and referred to herein as "LDS Bishop."

4.17    At all relevant times, Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints ("the LDS President") was a foreign corporation sole incorporated in the state of Utah that was registered to conduct business in the State of Washington.

4.18    At all relevant times, the LDS President conducted business as "Corporation of the President of the Church of Jesus Christ Latter-day Saints," "LDS President," and "LDS."

4.19    At all relevant times, High Priest Cochran was a High Priest for the LDS President that the LDS President used and relied upon as High Priest to serve Plaintiffs and minor religious members.

4.20    To the extent that the LDS President was a different entity, corporation, or organization, during the period in which High Priest Cochran used his position as High Priest to sexually abuse Plaintiffs, such entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the President of the Church of Jesus Christ of Latter-day Saints.

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.21    To the extent that the LDS President is a successor to a different entity, corporation, or organization which existed during the period of time during which High Priest Cochran used his position to sexually abuse Plaintiffs, including any other entity, corporation, or organization that subsequently or eventually merged into the LDS President, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as Corporation of the President of the Church of Jesus Christ of Latter-day Saints.

4.22    All such LDS President-related entities, corporations, or organizations are collectively identified and referred to herein as "LDS President."

4.23    Upon information and belief, Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints was renamed The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole. In addition, Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints merged into the renamed The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole. Upon information and belief, as part of this corporate restructuring, Defendant the Church of Jesus Christ of Latter-day Saints, a Utah corporation sole, agreed to assume all assets and all liabilities of the foregoing named defendants, known and unknown, including any liability resulting from the child sexual abuse alleged in this Complaint for Damages.

4.24    Given their relationship, the LDS church, LDS Bishop, and LDS President are collectively referred to as "LDS."

4.25    As part of LDS's religious mission, it authorizes and selected leaders to educate and minister to large geographic areas known as "Stakes" and sub-units of Stakes known as "Wards."

4.26    As part of their duties of LDS, the leaders of the 6th Ward, a subdivision of the Seattle Washington Stake, selected, in the form of "callings," various church administrators,



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

spiritual leaders, home teachers, leaders, and volunteers to interact with, as well as educate and minister to, religious members, including Plaintiffs.

4.27    At all relevant times, all of these Wards and Stake leaders and volunteers were acting as agents of LDS.

### III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over this action pursuant to RCW 2.08.010, and the Washington State Constitution.

3.2    Venue is proper in this Court pursuant to RCW 4.12.020 because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in King County.

### IV.    STATEMENT OF FACTS

4.1    At all relevant times, Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled child daycare programming and services at the Seattle Stake and its sub-unit wards.

4.2    At all relevant times the Defendants through their agents, servants, and employees, managed, maintained, operated, and controlled the leaders, employees, and volunteers of the child daycare programming and services at the Seattle Stake, including High Priest Cochran, when High Priest Cochran used his position with the Defendants to sexually abuse Plaintiffs and other minor religious members.

4.3    At all relevant times, Defendants were responsible for the hiring, recruitment, staffing, and did the hiring, recruitment, and staffing, for the leaders and volunteers of the child daycare programming and services of the Seattle Stake that their leader, High Priest Cochran, was involved in when he sexually abused Plaintiffs.

4.4    At all relevant times the Defendants were responsible for supervising the leaders and volunteers of the child daycare programming and other services at the Seattle Stake that their leader, High Priest Cochran, was involved in when he sexually abused Plaintiffs.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

4.5     At all relevant times, the Defendants held themselves out to the public as the owners of the child daycare programming and other services at the Seattle Stake that their leader, High Priest Cochran, was involved in when he sexually abused Plaintiffs.

4.6     At all relevant times the Defendants materially benefited from the operation of the Seattle Stake's child daycare programming and other services that their leader, High Priest Cochran, was involved in when he sexually abused Plaintiffs, including the services of High Priest Cochran and the services of those who managed and supervised High Priest Cochran.

4.7     At all relevant times the Defendant, through its agents, servants, and employees, managed, maintained, operated, and controlled the child daycare programming and religious services at its Seattle Stake that their leader, High Priest Cochran, was involved in when he sexually abused Plaintiffs.

4.8     At all relevant times the Defendants, through its agents, servants, and employees, managed, maintained, operated, and controlled the child daycare programming and other services at the Seattle Stake, including its policies and procedures regarding the sexual abuse of children.

4.9     At all relevant times, the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Stakes and Wards in Washington, including the Stake and Ward to which the Plaintiffs belonged when they were sexually abused by Defendants' leader,  High Priest Cochran.

4.10    At all relevant times, the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the leaders, volunteers, and members of Stakes and Wards in Washington, including the leaders, volunteers, and members of the Stake and Ward to which Plaintiffs belonged when they were sexually abused by one of those leaders, High Priest Cochran.

4.11    At all relevant times the Defendants, through their agents, servants, and employees, held out their agents, servants, and employees to the public as those who managed,

COMPLAINT FOR DAMAGES
7 of 22

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

maintained, operated, and controlled the Stake and Ward to which Plaintiffs belonged when they were sexually abused by one of the Defendants' leaders, High Priest Cochran

4.12    At all relevant times the Defendants were responsible for the hiring and staffing, and did the hiring and staffing, for the church volunteers of the Stake and Ward to which Plaintiffs belonged when they were sexually abused by the Defendants' leader, High Priest Cochran

4.13    At all relevant times the Defendants were responsible for the recruitment and staffing of the leaders of the Stake and Ward to which Plaintiffs belonged when they were seuxally abused by the Defendants' leader, High Priest Cochran.

4.14    At all relevant times the Defendants were responsible for supervising the leaders of the Stake and Ward to which Plaintiffs belonged when they were sexually abused by Defendants' leader, High Priest Cochran.

4.15    At all relevant times the Defendants, held themselves out to the public as the owners of the Stake and Ward to which Plaintiffs belonged when they were sexually abused by Defendants' leader, High Priest Cochran.

4.16    At all relevant times, the Defendants materially benefited from the operation of the Stake and Ward to which Plaintiffs belonged when they were sexually abused by the Defendants' leader, High Priest Cochran, including the services High Priest Cochran and the services of those who managed and supervised High Priest Cochran.

4.17    At all relevant times, the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Stake and Ward to which Plaintiffs belonged when they were sexually abused by the Defendants' leader, High Priest Cochran, including the Stake and Ward's leaders and volunteers.

4.18    At all relevant times, the Defendants, through their agents, servants, and employees, managed, maintained, operated, and controlled the Stake and Ward to which Plaintiffs belonged when they were sexually abused by the Defendants' leader, High Priest



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

Cochran, including the Stake and Ward's policies and procedures regarding the sexual abuse of children.

4.19    At all relevant times High Priest Cochran was a leader of Defendants who Plaintiffs believe held the positions of High Priest and child daycare volunteer of the Stake and Ward to which Plaintiffs belonged when they were sexually abused by High Priest Cochran.

4.20    At all relevant times, High Priest Cochran was on the staff of, was an agent of, or served as an employee or volunteer of the Defendants.

4.21    At all relevant times, High Priest Cochran was acting in the course and scope of his positions with Defendants.

4.22    At all relevant times, the Defendants, through their agents, servants, and employees held High Priest Cochran out to the public, to Plainitffs, and to their parents, as their agent.

4.23    At all relevant times, the Defendants, through their agents, servants, and employees, held High Priest Cochran out to the public, to Plaintiffs, and to their parents as having been vetted, screened, and approved to serve as one of their leaders and high priests.

4.24    At all relevant times, Plaintiffs and their parents reasonably relied upon the acts and representations of the Defendants, through their agents, servants, and employees, and reasonably believed that High Priest Cochran was one of their agents who was vetted, screened, and approved to serve as one of their leaders and high priests.

4.25    At all relevant times, Plaintiffs and their parents trusted High Priest Cochran because the Defendants held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Plaintiffs.

4.26    At all relevant times, Plaintiffs and their parents believed that the Defendants would exercise such care as would a parent of ordinary prudence in comparable circumstances when the Defendants assumed supervision, care, custody, and control of Plaintiffs.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

4.27    The Defendants were responsible for selecting and supervising the leaders, of its Stakes and Wards, including High Priest Cochran, when he used that position with the Defendants to sexually abuse Plaintiffs.

**Plaintiff Jane Doe #1**

4.28    When Jane Doe #1 was a minor, High Priest Cochran used his position as the Defendants' High Priest to sexually abuse Jane Doe #1

4.29    When Jane Doe #1 was a minor, she was a religious member of the Defendants, attended their religious services, participated in the church's activities, and spent time in their child daycare program.

4.30    Jane Doe #1 was sexually abused by High Priest Cochran on the Defendants' premises in Defendants' child daycare program when she was approximately 5 years old.

4.31    Based on representations of the Defendants that High Priest Cochran was safe and trustworthy, Jane Doe #1 and her parents allowed Jane Doe #1 to be under the supervision of, and in the care, custody, and control of the Defendants, including when Jane Doe #1 was sexually abused by High Priest Cochran.

4.32    Neither Jane Doe #1 nor her parents would have allowed her to be under the supervision of, or in the care, custody, or control of the Defendants, or High Priest Cochran, if the Defendants had disclosed to Jane Doe #1 or her parents that High Priest Cochran was not safe and was not trustworthy, including any prior concerns of inappropriate interactions with children, and that he in fact posed a danger to Jane Doe #1 in that High Priest Cochran was likely to sexually abuse Jane Doe #1.

4.33    Neither Jane Doe #1 nor her parents would have allowed Jane Doe #1 to attend the Defendants' religious services, participate in their church activities, or spend time in their child daycare program if the Defendants had disclosed to Jane Doe #1 or her parents that High Priest Cochran was not safe and was not trustworthy, including any prior concerns of

COMPLAINT FOR DAMAGES
10 of 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

inappropriate interactions with children, and that he in fact posed a danger to Jane Doe #1 in that High Priest Cochran was likely to sexually abuse Jane Doe #1.

4.34    Neither Jane Doe #1 nor her parents would have allowed Jane Doe #1 to attend the Defendants' religious services, participate in their church activities, or spend time in their child daycare program if the Defendants had disclosed to Jane Doe #1 or her parents that they knew for years that child molesters, like High Priest Cochran, were using their positions as church leaders within the church to groom and to sexually abuse children.

4.35    No parent of ordinary prudence in comparable circumstances would have allowed Jane Doe #1 to be under the supervision of, or in the care, custody, or control of the Defendants or High Priest Cochran if the Defendants had disclosed to Jane Doe #1 or her parents that High Priest Cochran was not safe and was not trustworthy, including any prior concerns of inappropriate interactions with children,  and that he in fact posed a danger to Jane Doe #1 in that High Priest Cochran was likely to sexually abuse her.

4.36    In approximately 1985, High Priest Cochran used his positions of trust and authority as a high priest of the Defendants to groom Jane Doe #1 and to sexually abuse her, including in connection with child daycare when Jane Doe #1 was under the supervision of, and in the care, custody, or control of, Defendants.

4.37    The sexual abuse by the Defendants' leader, High Priest Cochran, included, but was not limited to, placing Jane Doe #1 on his lap, and rubbing her vagina under her dress. There is no genuinely appropriate reason for High Priest Cochran to have placed Jane Doe #1 on his lap, which he did in front of another adult volunteer in charge of supervising the daycare program without any intervention or objection by that adult.

4.38    In approximately 1987, Jane Doe #1 reported to her mother that High Priest Cochran sexually abused Jane Doe #1 while she was in the church nursery. Jane Doe #1's mother reported the abuse to law enforcement and reported the abuse to the 6th Ward Bishop, Bishop Hoffman.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

4.39    According to Jane Doe #1's mother, Bishop Hoffman invited Jane Doe #1's parents to his home to discuss the allegations. High Priest Cochran and his wife were also present at this meeting.

4.40    According to Jane Doe #1's mother, during the meeting with Bishop Hoffman, neither Bishop Hoffman nor High Priest Cochran disclosed to Jane Doe #1's parents that High Priest Cochran previously pleaded guilty to sexually abusing High Priest Cochran's granddaughters.

4.41    According to Jane Doe #1's mother, Jane Doe #1's mother felt that the purpose of the meeting was to summarily deny the allegations and imply Jane Doe #1 was mistaken without any investigation. According to Jane Doe #1's mother, at the end of the meeting, Bishop Hoffman asked Jane Doe #1's mother if they still planned to talk to the police. The way that Bishop Hoffman spoke left Jane Doe #1's mother with the impression Bishop Hoffman wanted the matter to be closed because they had a meeting. When Jane Doe #1's mother confirmed she would be talking to the police, Bishop Hoffman and the Cochrans appeared disappointed.

4.42    Jane Doe #1's mother also called the mothers of other young girls at the 6th Ward, who Jane Doe #1's mother had observed to be in close contact with High Priest Cochran. Jane Doe #1's mother informed the mothers about Jane Doe #1's allegations of abuse because Bishop Hoffman told her that Defendants were not planning to take steps to warn its members about the risk that High Priest Cochran posed to children. Other minor church members reported that they, too, were sexually abused by High Priest Cochran.

4.43    According to Jane Doe #1's mother, when Bishop Hoffman learned of Jane Doe #1's mother's efforts to warn other members, Bishop Hoffman called Jane Doe's parents and threatened to take away Jane Doe #1's parents' temple recommend if they continued with these actions. Jane Doe #1's mother talked to the bishop of the 9th Ward, Bishop Larsen, about the threat, and this matter was escalated to the Stake President, Paul Diehl, who agreed to meet with Jane Doe #1's parents at his home.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

4.44    After the meeting, President Diehl instructed Bishop Hoffman to announce to the adults of the congregation that High Priest Cochran had been ex-communicated from the church and tell parents to be protective of their children.

4.45    High Priest Cochran pleaded guilty to sexually abusing Jane Doe #1 and another church member in 1988.

### **Plaintiff Jane Doe #2**

4.46    When Jane Doe #2 was a minor, High Priest Cochran used his position as the Defendants' High Priest to sexually groom and abuse Jane Doe #2 on and off church premises.

4.47    When Jane Doe #2 was a minor, she was a religious member of the Defendants, attended their religious services and participated in the church's activities.

4.48    Jane Doe #2 was sexually abused by High Priest Cochran for about a year when she was approximately 4 years old.

4.49    Based on representations of the Defendants that High Priest Cochran was safe and trustworthy, Jane Doe #2 and her parents allowed Jane Doe #2 to be under the supervision of, and in the care, custody, and control of the High Priest Cochran, including when Jane Doe #2 was sexually abused by him.

4.50    Neither Jane Doe #2 nor her parents would have allowed her to be under the supervision of, or in the care, custody, or control of the Defendants, or High Priest Cochran, if the Defendants had disclosed to Jane Doe #2 or her parents that High Priest Cochran was not safe and was not trustworthy, or that there had been prior concerns of his inappropriate contact with children, and that he in fact posed a danger to Jane Doe #2 in that High Priest Cochran was likely to sexually abuse Jane Doe #2.

4.51    Neither Jane Doe #2 nor her parents would have allowed Jane Doe #2 to attend the Defendants' religious services, participate in their church activities, or spend time at High Priest Cochran's home if the Defendants had disclosed to Jane Doe #2 or her parents that High Priest Cochran was not safe and was not trustworthy, or that any prior concerns of inappropriate



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

interactions had been made against High Priest Cochran, and that he in fact posed a danger to Jane Doe #2 in that High Priest Cochran was likely to sexually abuse Jane Doe #2.

4.52    Neither Jane Doe #2 nor her parents would have allowed Jane Doe #2 to attend the Defendants' religious services, participate in their church activities, or spend time at High Priest Cochran's home if the Defendants had disclosed to Jane Doe #2 or her parents that they knew for years that child molesters, like High Priest Cochran, were using their positions as church leaders to groom and to sexually abuse children.

4.53    No parent of ordinary prudence in comparable circumstances would have allowed Jane Doe #2  to be under the supervision of, or in the care, custody, or control of the Defendants or High Priest Cochran if the Defendants had disclosed to Jane Doe #2 or her parents that High Priest Cochran was not safe and was not trustworthy, or that any prior concerns of inappropriate interactions had been made against High Priest Cochran, and that he in fact posed a danger to Jane Doe #2 in that High Priest Cochran was likely to sexually abuse her.

4.54    In approximately 1983, High Priest Cochran used his positions of trust and authority as a high priest of the Defendants to groom Jane Doe #2 and to sexually abuse her.

4.55    High Priest Cochran would groom Jane Doe #2 by frequently inviting her to sit on his lap during church and then inviting her over to his home after church. There is no genuinely appropriate reason for High Priest Cochran to have placed Jane Doe #2 on his lap, which he did in front of other adults without any intervention or objection by those other adults.

4.56    While Jane Doe #2 was sitting on High Priest Cochran's lap during service, she felt her vagina become "itchy," and she scratched it. High Priest Cochran noticed Jane Doe #2's itching and invited her over to his home. He told her that he had something that would help her vagina feel better.

COMPLAINT FOR DAMAGES
14 of 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

4.57    Jane Doe #2 went to High Priest Cochran's home. He brought her into the bathroom, removed her underwear, and rubbed a cream on her genitals. As he rubbed her genitals, he asked her "does that feel good?"

4.58    The abuse happened in a similar fashion on several occasions. Jane Doe #2 recalls telling High Priest Cochran that she was not itchy anymore, to which he would reply "better that we check," and continue to abuse her.

4.59    The abuse continued until approximately 1984, when Jane Doe #2's grandfather Harold Glick, who was part of the Defendants' Bishopric, warned Jane Doe #2's father that he overheard other members of the Bishopric discussing High Priest Cochran. According to Jane Doe #2, her grandfather warned her father that Jane Doe #2 should not spend time alone with High Priest Cochran anymore, indicating he was a danger to children. Jane Doe #2 recalls her father telling her that she was not allowed to go to High Priest Cochran's home or sit near him at church anymore.

4.60    After Jane Doe #1 had reported the abuse, Jane Doe #1's mother contacted other mothers of girls at the church about the abuse, including Jane Doe #2's mother. When Jane Doe #2's mother talked to Jane Doe #2, Jane Doe #2 admitted that High Priest Cochran had abused her, too.

4.61    Despite the multiple criminal convictions for sexual abuse of minor girls and multiple allegations of abuse of minor religious members, the Defendants continued to allow High Priest Cochran to be heavily involved with church activities, including attending church events and transporting young girls to and from church as part of church programming.

4.62    The sexual abuse by Defendants' leader, High Priest Cochran, occurred using property that was owned, operated, and/or controlled by Defendants in the Ward to which Plaintiffs belonged.

COMPLAINT FOR DAMAGES
15 of 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

4.63    The sexual abuse by the Defendants' leader, High Priest Cochran, occurred during activities that were sponsored by the Defendants, or directly as a result of activities that were sponsored by the Defendants at the Ward to which Plaintiffs belonged.

4.64    At all relevant times, the Defendants, through their agents, servants, and employees, knew or should have known that High Priest Cochran was a sexual abuser of children who would use his positions with them to sexually abuse Plaintiffs and other children.

4.65    Defendants ignored clear red flags signaling that High Priest Cochran was a danger to Defendants' minor church members.

4.66    On many occasions in the 1980s, High Priest Cochran openly placed young girls on his lap during church primary in front of other adults responsible for supervising the program.

4.67    According to a woman who attended the church as a girl, on one occasion, around 1985 to 1986, High Priest Cochran openly placed her on his lap during church sacrament in a room full of people. High Priest Cochran inserted his fingers into her vagina. When she asked him "What are you doing?" He replied, "nothing," removed his fingers from her vagina, and wiped his fingers on his pants.

4.68    High Priest Cochran also openly placed young girls on his lap while he was supervising children at the nursery run by Defendants.

4.69    According to multiple women who attended the church as girls, it was known by church members that High Priest Cochran often invited young girls from church to his home because he regularly and openly invited young girls to his home.

4.70    According to multiple women who attended the church as girls, High Priest Cochran offered gifts to young girls to lure them to his home. This included jewelry boxes, music boxes, stuffed animals, or other toys.

4.71    According to one woman who attended the church as a girl, High Priest Cochran lured her to his home by offering to show her his pet rabbits or his rock collection.

COMPLAINT FOR DAMAGES
16 of 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.72    Defendants knew of the danger High Priest Cochran posed to children as early as approximately 1984 or 1985. In 1984 or 1985, Jane Doe #2's grandfather Harold Glick, who was part of the Bishopric, warned Jane Doe #2's father that based on conversations from other members of the Bishopric, Jane Doe #2 should not spend time alone with High Priest Cochran anymore, indicating he was a danger to children.

4.73    High Priest Cochran's danger to children was also documented by multiple criminal convictions for sex abuse.

4.74    According to publicly-filed court documents, on or about April 15, 1986, High Priest Cochran's neighbor discovered High Priest Cochran in a room adjoining his garage. High Priest Cochran had his pants down around his ankles and was discovered with his granddaughter, who was naked. High Priest Cochran told the neighbor not to tell anyone.

4.75    According to publicly-filed court documents, High Priest Cochran's granddaughter reported to her father that High Priest Cochran engaged in digital and vaginal intercourse with her on numerous occasions.

4.76    According to publicly-filed court documents, during the police investigation, it was also discovered that High Priest Cochran sexually abused one of his other granddaughters while he babysat her. On three occasions, he digitally penetrated her vagina and anus.

4.77    High Priest Cochran told the police that he engaged in oral intercourse with one of his granddaughters on 5 or 6 occasions.

4.78    High Priest Cochran told police that he had his granddaughter lay on top of him while his penis was exposed.

4.79    On or about March 1, 1987, High Priest Cochran pleaded guilty to two counts of Statutory Rape in the First Degree.

4.80    In September 1987, the Seattle Police Department investigated High Priest Cochran *again* for sexual abuse of minors. This investigation involved sexual abuse on Defendant's property and was reported by two minor church members, including Jane Doe #1.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.81    According to publicly filed court documents, one minor church member reported that at the church sanctuary, High Priest Cochran placed her on his lap, reached under her dress, and touched her genitals under and over her underwear.

4.82    Jane Doe #1 reported that High Priest Cochran placed her on his lap and pulled up her dress. He rubbed Jane Doe #1's genital area and asked her if it "felt good."

4.83    On May 11, 1988, High Priest Cochran pleaded guilty to two Indecent Liberties for sexual abuse that occurred on Defendant's property.

4.84    Despite numerous red flags, Defendants continued to give High Priest Cochran access to minor church members.

4.85    Defendants allowed High Priest Cochran to continue to attend and volunteer at church events, including those attended by minors.

4.86    Defendants also allowed High Priest Cochran to continue to transport young girls, including vulnerable refugee girls, to and from church events.

4.87    At all relevant times it was reasonably foreseeable to the Defendants, through their agents, servants, and employees, that High Priest Cochran's sexual abuse of children would likely result in injury to others, including the sexual abuse of Plaintiffs and other children by High Priest Cochran.

4.88    Before and during the time High Priest Cochran abused Plaintiffs, the Defendants, through their agents, servants, and employees, knew or should have known that High Priest Cochran was sexually abusing Plaintiffs and other children.

4.89    The Defendants, through their agents, servants, and employees, knew or should have known before and during High Priest Cochran's sexual abuse of Plaintiffs that leaders, volunteers, members, and other persons who worked with youth had used their positions to groom and to sexually abuse children.

4.90    The Defendants, through their agents, servants, and employees, knew or should have known before and during High Priest Cochran's sexual abuse of Plaintiffs that such

COMPLAINT FOR DAMAGES
18 of 22



701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

leaders, volunteers, members, and other persons who worked with youth could not be "cured" through treatment or counseling.

4.91    The Defendants, through their agents, servants, and employees, concealed the sexual abuse of children by High Priest Cochran in order to conceal their own bad acts in failing to protect children from him, to protect their own reputation, and to prevent victims of such sexual abuse by High Priest Cochran and religious members from coming forward, despite knowing that High Priest Cochran and other abusers in their ranks would continue to molest children.

4.92    The Defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that High Priest Cochran would use his positions with the Defendants to sexually abuse children, including Plaintiffs.

4.93    The Defendants, through their agents, servants, and employees, disregarded their knowledge that High Priest Cochran would use his positions with them to sexually abuse children, including Plaintiffs.

4.94    The Defendants, through their agents, servants, and employees, acted in concert with High Priest Cochran to conceal the danger that High Priest Cochran posed to children, including Plaintiffs, so that High Priest Cochran could continue serving the Defendants despite their knowledge of that danger.

4.95    The Defendants, through their agents, servants, and employees, knew that their negligent, willful, wanton, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Plaintiffs, and she did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

4.96    By reason of the wrongful acts of the Defendants as detailed herein, Plaintiffs sustained psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, anger, depression, anxiety, family turmoil and

COMPLAINT FOR DAMAGES
19 of 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Plaintiffs have and/or will become obligated to expend sums of money for treatment.

## V.    CAUSES OF ACTION

### A.    Negligence

5.1    Plaintiffs re-allege the paragraphs set forth above and below.

5.2    The Defendants had a duty to take reasonable steps to protect Plaintiffs from foreseeable harm when they were in Defendants' care, custody, and control, including when attending Defendants' religious services and participating in Defendants' church activities, at the Ward to which they belonged.

5.3    The Defendants also had a duty to take reasonable steps to prevent High Priest Cochran from using the tasks, premises, and instrumentalities of his positions as their leader and High Priest to target, groom, and sexually abuse children, including Plaintiffs.

5.4    The Defendants had a duty to warn, train, or educate their leaders, volunteers, and members including Plaintiffs, about the danger of sexual abuse by their leaders, volunteers, and members and how to avoid or minimize such danger.

5.5    The Defendants breached each of the above duties by failing to exercise reasonable care to prevent their leader, High Priest Cochran from harming Plaintiffs, including sexually abusing them.

5.6    In breaching their duties, including hiring, retaining, and failing to supervise High Priest Cochran; giving High Priest Cochran access to children; entrusting their tasks, premises, and instrumentalities to High Priest Cochran; failing to train their personnel on the signs of sexual predation and to protect children from sexual abuse and other harm; failing to warn Plaintiffs, their parents, and other parents of the danger of sexual abuse; and failing to create a safe and secure environment for Plaintiffs and other children who were under their



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

supervision and in their care, custody, and control, the Defendants created a foreseeable risk that Plaintiffs would be sexually abused by High Priest Cochran.

5.7     As a direct and proximate result of the Defendant's negligent acts and omissions, their leader, High Priest Cochran, was allowed to sexually abuse Plaintiffs, causing them to suffer general and special damages in an amount to be proven at trial.

**B.     Outrage**

5.8     Plaintiffs re-allege the paragraphs set forth above and below.

5.9     The Defendants intentionally and/or recklessly caused severe emotional distress to Plaintiffs due to their extreme and outrageous conduct that went beyond all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community.

5.10     As a direct and proximate result of the acts and omissions of Defendants, their leader, High Priest Cochran, sexually abused Plaintiffs which caused Plaintiffs to suffer general and special damages in an amount to be proven at trial.

## VI.     PRAYER FOR RELIEF

6.1     Plaintiffs respectfully pray for the following relief against the Defendant:

    a.   That the Court award Plaintiffs monetary relief to include all special and general damages established at trial;

    b.   That the Court award Plaintiffs their costs, reasonable attorney fees, and any statutory interests applicable under law or equity;

    c.   That the Court award Plaintiffs pre-judgment interest on items of special damages;

    d.   That the Court award Plaintiffs post judgment interest; and

    e.   That the Court award Plaintiffs such other relief, under law or equity, as the Court may deem just and proper.

COMPLAINT FOR DAMAGES
21 of 22

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1

2

DATED this 18th day of August 2025.

3

4                                              PFAU COCHRAN VERTETIS AMALA PLLC

5                                   By: _____

6                                              Michael T. Pfau, WSBA No. 24649
                                               michael@pcvalaw.com
7                                              Vincent T. Nappo, WSBA No. 44191
                                               vnappo@pcvalaw.com
8                                              Denise Chen, WSBA No. 59906
                                               dchen@pcvalaw.com

9

10                                             *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624